UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CASE NO. 1:11-cv-01700

CLIP VENTURES, LLC,

    Plaintiff,

v.

SUNCAST CORPORATION,

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR**
**UNCONSTITUTIONALITY OF FALSE MARKING STATUTE, 35 U.S.C. § 292(b)**

    The Defendant, SUNCAST CORPORATION, respectfully requests that the Court, in the event it does not stay[1] these proceedings, dismiss the Complaint with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1), because the Complaint is brought under authority of the false patent marking statute, 35 U.S.C. 292(b), which is unconstitutional as violative of the Take Care Clause of Article II of the United States Constitution.

    The Plaintiff sues as a *qui tam* relator under Section 292(b), which provides that "[a]ny person may sue for the penalty [for false patent marking], in which event one-half shall go to the person suing and the other to the use of the United States." This particular delegation of standing to a *qui tam* relator is unconstitutional and invalid under the Take Care Clause. Unlike other federal statutes authorizing *qui tam* lawsuits, Section 292(b) operates as the wholesale, *uncontrolled* delegation of criminal law enforcement power from the Executive Branch (i.e., the

---

[1] The Defendant files concurrently herewith its Motion to Stay Pending Dispositive Congressional Action and Decision in Dispositive Case, and its Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted. The present Motion is filed to preserve the Defendant's procedural and substantive rights under Fed. R. Civ. P. 12.

1

Department of Justice) to private entities. The statute lacks any of the safeguards and controls necessary to satisfy Article II. It allows any private entity that simply observes a product marked with an expired or invalid patent to file a criminal lawsuit in the name of the United States, without first obtaining approval from, or even so much as notifying, the Department of Justice. The lawsuit can then be conducted without any control or oversight by the Department, with potentially draconian results. The relator may settle the case and bind the government without any involvement or approval thereof. The statute's sole required government involvement is the sharing of any fine negotiated with respect to the alleged false patent marking. The sum of such penalties unfortunately is determined by the relator's private pecuniary interest rather than the benefit of the public welfare.

The result of this delegation of criminal law enforcement power to private entities has been the proliferation of false marking lawsuits, in which the relator gives a defendant the choice between expending considerable time and resources defending its good name through litigation[2], or simply paying the relator a lucrative settlement amount to buy "peace of mind" and rid itself of the litigation, irrespective of whether the defendant has actually committed any culpable wrongdoing. Section 292 allows relators to pursue the role of unbridled government enforcer purely for private, self-interested gain. It lacks the procedural controls and safeguards necessary to satisfy Article II, and is therefore unconstitutional. The Complaint should be dismissed with prejudice.

---

[2] The relator can file suit with nothing more than allegations that the defendant's products were marked with deceptive intent requisite of an actionable violation of the statute. The Defendant, conversely, must then spend time and money defending itself and establishing its innocence, with an aim toward prevailing at summary judgment in otherwise baseless litigation. *See, e.g., Heathcote Holdings Corp., Inc. v. William K. Walthers, Inc.,* Case No. 1:09-cv-06722 (N.D. Ill. 2011); *Pequignot v. Solo Cup Co.,* 640 F. Supp. 2d 714 (E.D. Va. 2009), *aff'd,* 608 F.3d 1356 (Fed. Cir. 2010).

## I. SECTION 292 ALLOWS UNFETTERED ENFORCEMENT BY RELATORS

Under Section 292, it is unlawful to mark a product with, or use in advertising, a patent number in connection with products that are not patented. 35 U.S.C. § 292. The penalty for violating the statute is a fine of "not more than $500 for every such offense." *Id.* In *Forest Group, Inc. v. Bon Tool Co.,* 590 F.3d 1295, 1301-1303 (Fed. Cir. 2009), the Federal Circuit held that violators face this fine for each article improperly marked, rather than for each decision to improperly mark multiple articles. It is reported that over 800 false marking suits have been filed in U.S. district courts in the fifteen months since this decision. *See* Justin E. Gray, Gray on Claims – False Marking Case Information (March 16, 2011), www.grayonclaims.com/false-marking-case-information. In *Forest Group*, the Federal Circuit noted the possibility that false marking suits could lead to such negative consequences, but nevertheless concluded that its reading of Section 292(b) was compelled by statutory text and purpose. *See Forest Group,* 590 F.3d at 1302-1304. But even assuming, *arguendo,* that this reading reflects Congress's true intent,

> "[the] fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution, for convenience and efficiency are not the primary objectives – or the hallmarks – of democratic government." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.,* 130 S. Ct. 3138, 3156 (2010).

It is worth noting that "despite being punishable only with a civil fine … the false marking statute is a criminal one." *Pequignot v. Solo Cup Co.,* 608 F.3d 1356, 1363 (Fed. Cir. 2010), *citing* S.Rep. No. 82-1979, 1952 U.S.C.C.A.N. 2394, 2424 (1952). Nevertheless, the statute contains a *qui tam* provision, whereby any person may sue to enforce the statute. This *qui tam* provision, unlike *qui tam* provisions of other statutes whose constitutionality has been

upheld[3], violates the Take Care Clause of Article II of the U.S. Constitution because it provides no Executive controls and safeguards with respect to the relator.

        A.      *The Take Care Clause Requires Executive Control over Qui Tam Relators*

Separation of powers lies at the heart of the governmental structure created by the U.S. Constitution. *Buckley v. Valeo,* 424 U.S. 1, 119 (1976). In dividing the powers of the federal government among its three branches, the Framers "consciously decide[d] to vest Executive authority in one person rather than several." *Clinton v. Jones,* 520 U.S. 681, 712 (1997). This constitutional design was meant to ensure that the enforcement of the laws, which carries an enormous potential for overreaching and abuse, would be in the hands of responsible officials who are accountable to the people. Separation of powers prohibits one branch of government from intruding on the constitutionally granted powers of another. *See Humphrey's Executor v. United States,* 295 U.S. 602, 629-630 (1935). It is violated when one branch aggrandizes itself at the expense of another, *or* when one branch "impermissibly undermine[s]" another's constitutionally granted powers. *See Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 856 (1986).

The Take Care Clause provides that the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, §3. The Supreme Court has noted that the Framers understood this to be the President's "most important constitutional duty". *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 557 (1992). That duty includes the responsibility to initiate litigation as the "ultimate remedy for a breach of the law." *Buckley,* 424 U.S. at 138. Congressional delegation of the President's law enforcement authority, therefore, is permissible only when the

---

[3] The Defendant acknowledges that the constitutionality of Section 292 was upheld in the case of *Zojo Solutions, Inc. v. Stanley Works,* 712 F. Supp. 2d 756 (N.D. Ill. 2010). However, the decision pre-dates the Federal Circuit's *Pequignot* decision characterizing Section 292 as a criminal statute, and focuses on the constitutionality of *qui tam* actions in general, which is not challenged in this Motion.

Executive retains "sufficient control over the [party with the power to enforce the law] to ensure that the President is able to perform his constitutionally assigned duties" under the Take Care Clause. *See Morrison v. Olson,* 487 U.S. 654, 696 (1988). The *qui tam* provision of Section 292(b) is unconstitutional under this Clause because the Executive Branch lacks sufficient control over litigation in which the United States is the real party in interest.

In *Morrison*, the Supreme Court examined the constitutionality of the Ethics in Government Act of 1978 ("EGA"), which allows Congress to appoint an independent counsel to "investigate and, if appropriate, prosecute certain high-ranking Government officials for violations of federal criminal laws." *Id.*, at 660. Though the *Morrison* opinion did not specifically address the Take Care Clause, the Supreme Court did consider whether the EGA violated the constitutional principle of separation of powers by "restricting the Attorney General's power to remove independent counsel to only those instances in which he can show 'good cause'" and by "reducing the President's ability to control the prosecutorial powers wielded by the independent counsel." *Id.,* at 686. The Court found that reducing the President's ability to control prosecutorial powers does not "violate the principle of separation of powers by unduly interfering with the role of the Executive Branch." *Id.,* at 693. Specifically, the Court highlighted four features of the EGA giving the Executive Branch sufficient control over the independent counsel to ensure that the President is able to perform his constitutionally assigned duties: (1) the Attorney General retains the power to remove independent counsel for good cause; (2) independent counsel is only appointed upon specific request of the Attorney General and the Attorney General's decision not to appoint independent counsel is not reviewable; (3) independent counsel's jurisdiction is defined by the facts submitted by the Attorney General; and

(4) independent counsel must abide by Department of Justice policies, whenever possible. *Id.,* at 696.

Courts have relied on *Morrison* to uphold the *qui tam* provisions of the False Claim Act ("FCA"), 31 U.S.C. § 3730, another of the three currently remaining *qui tam* statutes, and applied the separation of powers analysis to the Take Care Clause. *See United States ex rel. Robinson v. Northrop Corp.,* 824 F. Supp. 830, 836-838 (N.D. Ill. 1993); *United States ex rel. Taxpayers Against Fraud v. General Electric Co.,* 41 F.3d 1032 (6th Cir. 1994); *United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 745 (9th Cir. 1993). Concluding that the *qui tam* provisions of the FCA "have been crafted with particular care to maintain the primacy of the Executive Branch in prosecuting false-claims actions," the Court in *Taxpayers Against Fraud* noted that the FCA allows the government to: (1) require the relator to inform it of developments and to send copies of relevant litigation materials, even if the government has decided against intervening; (2) intervene even after first refusing to intervene, upon showing of good cause; (3) move to restrict the role of the relator in litigation; and (4) move to seal the relator's findings for more than sixty days. *U.S. ex rel. Taxpayers Against Fraud,* 41 F.3d at 1041. Therefore, pursuant to *Morrison* and the Take Care Clause, "the Executive Branch retains 'sufficient control' over the relator's conduct to 'ensure that the President is able to perform his constitutionally assigned dut[y]' … to take Care that the Laws be faithfully executed." *Id., citing Morrison,* 487 U.S. at 696. Other courts have upheld the constitutionality of the FCA, but have expressly done so because of the numerous methods of Executive control the statute provides. *See, e.g., Kelly,* 9 F.3d at 755 ("[T]he FCA gives the Attorney General sufficient means of controlling or supervising relators to satisfy separation of powers concerns.").

B.  *Section 292 Provides No Executive Control over Qui Tam Relators*

Given that private opportunism and public good do not always mix, and that the harms redressed by the FCA belong to the government, the FCA provides a number of mechanisms to ensure that the government retains significant authority to regulate *qui tam* litigation. Conversely, though the harm redressed in Section 292 is to the public and the United States is the real party in interest, Section 292 has no similar mechanisms to control *qui tam* relators, and therefore divests the Executive of its authority to "take Care that the Laws be faithfully executed." The text of the statute has no mention of Executive involvement. The statute does not require that the Executive receive notice of false marking cases, an essential first step to exerting influence over litigation. The statute does not provide the Executive with any means of controlling the initiation, prosecution or termination of such cases. By preventing the Executive from maintaining control over false marking cases and thus "accomplishing its constitutionally assigned functions," the statute "disrupts the proper balance between the coordinate branches." *Nixon v. Administrator of General Servs.,* 433 U.S. 425, 443 (1977).

Furthermore, there are no protections from other sources of law to provide controls the statute itself lacks. For example, although 35 U.S.C. § 290 requires courts to give the U.S. Patent and Trademark Office (USPTO) notice of all patent cases within one month of filing, this does not inform the Executive that a pending case is a false marking suit. It does not notify the proper agency – the Department of Justice – that is responsible for representing the United States in patent cases in the district courts. It does not give the Executive sufficient time to act promptly to affect the suit. The USPTO would be hard pressed to determine in short order which patent suits involved false marking claims. Even if the government examined each patent file to locate each notice of suit sent by district court clerks, such notice would not tell the government

7

whether it referenced a false marking suit or an infringement suit. Indeed, by the time to government is informed of the false marking suit, the case may have already been settled. As courts have noted,

> "This presents a unique problem with False Marking *qui tam* actions because relators are likely to be interested in a quick settlement without the delay and expense of protracted litigation. Thus, without even being notified of the *qui tam* action brought on its own behalf, the government may be bound by a settlement and will likely [be] precluded from bringing its own suit under the doctrine of res judicata." *Unique Prod. Solutions, Ltd. v. Hy-Grade Valve, Inc.,* 2011 U.S. Dist. LEXIS 18237, at *20 (N.D. Ohio 2011).

By way of contrast, the FCA affords the government the right to be notified of the case before the defendant is served, and gives the Executive time to consider whether to "(A) proceed with the action, in which case the action shall be conducted by the Government; or (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action." 31 U.S.C. §§ 3730(b)(2); (b)(4)(A-B).

In addition, Section 292 deprives the Executive of any ability to initiate a false marking suit. The statute empowers "[a]ny *person*" to "sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." 35 U.S.C. § 292(b) (emphasis added). It is a "longstanding interpretive presumption that 'person'" in federal legislation "does not include the sovereign." *Vermont Agency of Nat. Res. V. United States ex rel. Stevens,* 529 U.S. 765, 780-781 (2000). Once again, the FCA provides a sharp contrast illustrative of Section 292's constitutional shortcomings. The FCA authorizes the Attorney General to bring a civil action against a person he finds has violated the FCA. 31 U.S.C. § 3730(a).

Section 292 further deprives the government of the option to control the conduct of the action. At most, the government may seek to intervene under Fed. R. Civ. P. 24, but such

opportunity is inadequate to satisfy the Executive's control obligations. As the *Unique Product* court noted, "Rule 24 … fails to sufficiently protect the government because it does not require that the government actually be served with a False Marking complaint or any relevant pleadings." *Unique Prod.,* 2011 U.S. Dist. LEXIS 18237, at *19. Moreover, the government's ability to intervene – like that of any other party – would be subject to the need for court approval, a timely motion[4] and a finding that the relator cannot adequately represent the interests of the United States. Fed. R. Civ. P. 24(a)(2). The government's right to intervene would also be far more limited than the special intervenor rights granted to the Executive by the FCA or the controls over independent counsel noted in *Morrison*. For example, the ability of an ordinary intervenor to veto a settlement, by withholding its consent to a voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii), does not guarantee the Executive the power to seek dismissal or settlement of the relator's action over the relator's objection, as provided in FCA Section 3730(c)(2)(A). It does not guarantee power to take primary responsibility over the litigation, as provided in FCA Section 3730(c)(1). It does not give power to seek to limit the relator's discovery, as provided in FCA Section 3730(c)(4). An ordinary intervenor may not remove a relator under any circumstances, nor determine the scope of the relator's complaint, in contrast to the Attorney General's powers recited in *Morrison.*

Section 292 falls short of providing the Executive the controls necessary to ensure that it has the power to control the initiation, prosecution and termination of false marking suits. It does not give the Executive the controls necessary to take care that the laws are faithfully executed. "[U]nlike any other statute in the Federal Code," Section 292 represents a "wholesale

---

[4] Indeed, the timeliness of the government's Rule 24 motion was at issue in the *Unique Product* court's reconsideration of its first order finding Section 292 unconstitutional. The court granted the government's motion to intervene, and then reaffirmed its finding that the statute is unconstitutional. *See Unique Product Solutions, Ltd. v. Hy-Grade Valve, Inc.,* 2011 U.S. Dist. LEXIS 25328 (N.D. Ohio March 14, 2011).

delegation" of enforcement power to private persons, completely absent any control by the Department of Justice. *Unique Prod.,* 2011 U.S. Dist. LEXIS 18237, at **21-22. A false marking relator may bring suit without even notifying the Department. The relator can litigate the case without any Executive oversight, with the Executive's ability to intervene limited to that of an ordinary party, subject to the discretion of the district court, and devoid of any power to limit the relator's participation. The government has no right to stay discovery or dismiss the action. Finally, without even notifying the Department of Justice, the relator may settle the case and bind the government. An enforcement regime of this nature cannot survive constitutional scrutiny.

## II. PRACTICAL POLICY REASONS SUPPORT VESTING LAW ENFORCEMENT POWER WITH THE EXECUTIVE BRANCH

By constitutional design and mandate, the Executive must maintain control over litigation brought on behalf of the government. "As Madison stated on the floor of the First Congress, 'if any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, *and controlling* those who execute the laws.'" *Free Enter. Fund,* 130 S. Ct. at 1351 (quoting 1 Annals of Cong. 463 (1789)) (emphasis added). This requirement represents wise policy. A private citizen wielding sovereign power can be hazardous to the public if not kept in check.

As courts have noted, there are very practical, important policy reasons why the Take Care Clause vests federal law enforcement power with the Executive, and why delegation of that power to a private entity must be sufficiently controlled. Prosecutors are granted power not given to private parties. With such power comes the responsibility to use it to benefit the public welfare, not some private interest. *Unique Prod.,* 2011 U.S. Dist. LEXIS 18237 at **23. The doctrine of prosecutorial discretion vests each attorney with the responsibility to determine whether or not a particular enforcement action is fully supported by the law and facts, and

10

whether it is in the public interest to initiate it. *Id.* A government attorney must take into consideration the impact of any enforcement action upon the system as a whole and upon the administration of justice; a private attorney has no such responsibility. *Id.*

In stark contrast, a *qui tam* false patent marking relator need only go to the store and look for products marked with what have appeared to be readily identifiable lapsed patents. The relator need not demonstrate injury to itself to have Article III standing to bring suit. *Stauffer v. Brooks Bros., Inc.,* 619 F.3d 1321, 1325 (Fed. Cir. 2010). While the courts have noted that the bar for proving the requisite deceptive intent in such cases is particularly high, they have nevertheless found a rebuttable presumption of such intent behind the markings alleged in a false marking suit. *Pequignot v. Solo Cup Co.,* 608 F.3d 1356, 1362-1363 (Fed. Cir. 2010); *In re BP Lubricants USA, Inc.,* 2011 U.S. App. LEXIS 5015 (Fed. Cir. 2011). Thus, the relator is effectively insulated from Rule 11 sanctions, at least until it becomes clear - after the defendant spends considerable resources in pretrial litigation - that there was no basis in law or fact to allege such intent. In the interim, the defendant typically receives a demand for a settlement payoff, in exchange for the peace of mind of having the litigation concluded quickly. It has been reported that the average value of such settlements is $53,404, with a median value of $40,000. *See* Dennis Crouch, Patently-O – False Marking Settlement Updates (March 15, 2011), www.patentlyo.com/patent/2011/03/false-marking-settlement-updates.html.

Such consequence of the uncontrolled privatization of law enforcement is attributable to the financial penalties set forth in Section 292. The penalty can be as high as $500 per article falsely marked. Depending on the number of articles, the total penalty could be either slight or staggering.[5] The penalty need not be calibrated to the size or economic strength of the

---

[5] By way of example, the fine sought by the relator in *Pequignot v. Solo Cup Co.,* in which the marked products were plastic cups selling for pennies each, would have paid significantly toward the national debt as it stood at the

defendant, the significance of the product or any degree of competitive harm the false marking may have had beyond the gross number of articles falsely marked. *Unique Prod.,* 2011 U.S. Dist. LEXIS 18237 at *24, *citing Forest Group,* 590 F.3d at 1303. Such decisions should be made by government attorneys having no financial stake in the outcome in the litigation or settlement, not by private parties motivated solely by the prospect of financial gain. *Id.* Section 292 allows for, and has resulted in, private enforcement of public law run amok. The statute fails to provide the controls and safeguards necessary to satisfy Article II. This Motion should be granted.

## CONCLUSION

The current false patent marking regime encourages private plaintiffs to seek money from businesses through the unfettered private enforcement of a criminal statute. Although the government is the real party in interest, Section 292 provides the Executive Branch no means of control over false patent marking litigation. Because the statute calls for the private enforcement of a criminal statute without any means of government control or oversight, it is unconstitutional as violative of the Take Care Clause of Article II of the United States Constitution. Section 292 does not pass constitutional scrutiny. This action should therefore be dismissed with prejudice.

---

time. *See Pequignot,* 608 F.3d at 1359, n.1 (noting, of false marking suit seeking approximately $5.4 trillion, that "such an award to the United States … would be sufficient to pay back 42% of the country's total national debt.").

Respectfully submitted,

McHALE & SLAVIN, P.A.

/s/ Brian M. Taillon
Edward F. McHale
Brian M. Taillon
McHALE & SLAVIN, P.A.
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
Telephone: (561) 625-6575
Facsimile: (561) 625-6572
E-mail: litigation@mchaleslavin.com

Peter J. Miller
GORDON, RAPPOLD & MILLER, LLC
20 South Clark Street, Suite 2600
Chicago, Illinois 60603
Telephone: (312) 332-5200
Facsimile: (312) 332-2952
E-mail: pjm@grmlawfirm.com

*Attorneys for the Defendant*